UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OUTSTATE MICHIGAN TROWEL
TRADES PENSION FUND, Trustees of;
OUTSTATE MICHIGAN TROWEL
TRADES HEALTH & WELFARE FUND,
Trustees of; and OPERATIVE PLASTERERS
AND CEMENT MASONS INTERNATIONAL
ASSOCIATION JOINT APPRENTICESHIP
AND TRAINING FUND, Trustees of,

   Plaintiffs,      CIVIL ACTION NO. 08-14890

 v.          DISTRICT JUDGE JOHN FEIKENS

NILES GROUP, LTD. d/b/a    MAGISTRATE JUDGE MARK A. RANDON
VALLEY PAINTING, INC.,

   Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Before the court is Plaintiffs' motion for summary judgment on liability (Dkt. No. 31).[1]  On

January 6, 2010, this motion was referred for a Report and Recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B).  The matter has been fully briefed by the parties and oral argument was heard on

---

[1] Plaintiffs filed a previous motion for summary judgment (Dkt. No. 15) advancing the same arguments as the present motion.  This previous motion was supposed to be withdrawn by Plaintiffs, but the docket reflects that it is still pending.  In any event, Plaintiffs' previous motion for summary judgment (Dkt. No. 15) should also be denied for the reasons set forth in this Report and Recommendation.

- 1 -

February 23, 2010. For the reasons stated below, it is **RECOMMENDED** that Plaintiffs' motion be **DENIED**.

I.      BACKGROUND

Plaintiffs are multi-employer fringe benefit funds ("the Funds") affiliated with Local 16 of the Operative Plasterers and Cement Masons International Association ("Local 16"). The Funds are governed by the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.* Defendant Niles Group, Ltd. d/b/a Valley Painting, Inc. ("Valley Painting") is a Michigan painting contractor, subject to at least two collective bargaining agreements ("CBAs") with Local 16.[2]

After an audit of its books, the Funds brought suit alleging that Valley Painting failed to abide by the CBAs, which require Valley Painting to pay contributions to the Funds for each hour of work spent on fireproofing and other plastering jobs. (Dkt. No. 31, pp. 1-2) The Funds claim entitlement to unpaid contributions for specific fireproofing work performed between April 2004 and May 31, 2006 totaling $55,703.07 ($51,041.81 in audited amounts and $4,661.26 in liquidated

---

[2] The specific CBAs at issue are: (1) the "Agreement entered into between LANSING, JACKSON AREA CONTRACTORS and LOCAL #16 [Clinton, Eaton & Ingham Counties; and Northwestern portion of Livingston County including the Townships of Conway, Cohoctah, Handy and Howell and the City of Howell, all of Jackson County of the Operative Plasterers and Cement Masons International Association AFL-CIO]" ("the Lansing/Jackson CBA"); and (2) the "Agreement entered into between FLINT AREA CONTRACTORS and LOCAL #16 [all of the Genesee and Shiawassee Counties and the Northeastern portion of Livingston County, North of Highway M-59, including Deerfield, Tyrone, Osceola and Hartland Townships of the Operative Plasterers and Cement Masons International Association AFL-CIO]" ("the Flint Area CBA"). The relevant provisions of these CBAs have identical language, unless otherwise indicated.

damages).³ (Dkt. No. 31, pp. 1-2) It is undisputed that Valley Painting did not make contributions to the Funds for this particular work. It contends, however, that the CBAs only require the payment of contributions for work *actually performed* by members of Local 16; that it paid contributions to the benefit funds of the competing unions that performed the specific work at issue; and that the CBAs are at least ambiguous on the issue of whether it is also required to make contributions to the Funds for the same work (a so called "double payment"). (Dkt. No. 33)

Apparently, Valley Painting does not dispute that it is subject to the CBAs with Local 16 (Dkt. No. 33, p. 4), and that some of the work at issue was performed within the jurisdiction(s) covered by the CBAs.⁴ (Dkt. No. 33, pp. 14-15) During oral argument, counsel for the Funds acknowledged that the contributions sought *do not* arise from work performed by members of Local 16 (Hr. Tr.).⁵ Further, the parties agree that there is no specific provision in the CBAs that requires a double payment. (Hr. Tr.) Thus, the central issue in the Funds' motion is one of contract interpretation. The Funds claim that the plain language of the CBAs unambiguously requires Valley Painting to pay contributions for fireproofing and other plasterers' work – whether or not performed by members of Local 16 – such that they are entitled to judgment as a matter of law on the issue of liability. (Dkt. No. 31, pp. 12-16) After review of the relevant language of the CBAs, the undersigned disagrees.

---

³ Article XIV, Sections 7 and 8 of the CBAs provide for liquidated damages on all late and unpaid contributions to the Funds.

⁴ *See* note 2 for the specific geographical locations covered by the CBAs.

⁵ "Hr. Tr." refers to the transcript of the oral argument in this matter.

### A. *Relevant CBA provisions*

The Funds claim a right to contributions pursuant to Article XIV of the CBAs. Article XIV, under the heading "Health and Welfare," requires Valley Painting to contribute $3.20 per hour to Local 16's health and welfare fund "on all plasterers whenever and wherever employed." This provision also requires Valley Painting to contribute $3.85 and $0.20 per hour to the pension and apprenticeship funds, respectively, "on all Journeymen and Apprentices whenever or wherever employed." During oral argument, Plaintiffs' counsel was asked to provide the specific CBA provision(s) upon which the Funds rely in support of their claim. The following three provisions were offered: (1) Article XV, Paragraph 2; (2) Article I, Sections 1 and 2; and (3) Article 12, Section 3.

**Article XV, Paragraph 2** states:

**Scope of Work – Plasterers**

\* \* \*

> The Plasterers shall have jurisdiction over, but shall not be limited to: The preparation, installation and repair of all interior and exterior insulation systems, including, and not limited to, foam systems, bead boards, outsulation, ultralation, lead abatement, encapsulation *and all fireproofing and refraction work*, including but not limited to, all steel beams, columns, mental decks, and vessels shall be the work of the plasterers, including the operation of all machine type guns.

(Emphasis added). The Funds argue that this language unequivocally supports its contention that all fireproofing work falls within the scope of "plasterers work."

**Article I Sections 1 and 2** provide in relevant part:

> **Section 1.** The Employer recognizes the Union as the sole and exclusive collective bargaining representative *for all persons employed by it performing work covered by this Agreement* on all present and future job sites within the geographical area coming within the jurisdiction of this agreement. . .
>
> **Section 2.** The Employer agrees to adopt and continue in full force and effect *for all plasterers work* performed within the geographic jurisdiction of the Union beyond June 1, 2002 or any subsequent expiration date of the foregoing June 1, 2002 through May 31, 2004 Agreement between the Union and the Lansing/Jackson area Plastering Contractors.

(Emphasis added). The Funds maintain that "[these provisions] unambiguous[ly] require defendant to pay contributions based on 'plasterers work' and 'work covered by this agreement.'" (Dkt. No. 31, p. 12) The Funds state that the lack of capitalization in the term "plasterers" indicates that the term refers to <u>any</u> individuals performing plastering work, rather than just those who are members of Local 16. (Dkt. No. 31, p. 14, n. 2) And, that "[the CBAs] provide that Local 16 is the 'sole and exclusive collective bargaining representative for all persons employed by it performing work covered by this Agreement on all present and future job sites within the geographical area coming within the jurisdiction of this Agreement, ...'" (Dkt. No. 31, p. 12)

**Article XII, Section 3** states:

> **Section 3.** When the Employer has any *Plastering work* to be performed outside of the area *covered by this Agreement*, and within the area covered by an Agreement with this Local or another affiliate of the OP&CMIA, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area. *Employees covered by this Agreement* who are sent projects outside of the area covered by this Agreement, shall be paid at least the established minimum wage scale specified in article XIV of this Agreement but

> in no case less than the established minimum wage scale for local Agreement covering the territory in which such work is being performed, plus all contributions specified in the jobsite local Agreement. If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in this Agreement, the full terms and conditions of this Agreement shall apply.

(Emphasis added). Plaintiffs claim that because of this "traveling clause," any plastering work performed for Valley Painting, even if by a non-Local 16 worker outside the jurisdiction of the CBAs, requires contributions to the Funds.

On the other hand, Valley Painting claims the CBAs do not mandate payment of contributions for the work at issue, which it contends was actually performed by the following competing unions: Bricklayers, Local #9, Painters and Tapers, Local #312, Painters & Allied Trades, Local #845, and Painters and Allied Trades, Local #1052. (Dkt No. 33, Exs. A-E). Valley Painting claims that it made contributions to the benefit funds of these competing unions as required by their specific CBAs and, thus, should not have to make an additional "windfall" contribution to the Funds for this work. Valley Painting points out that Article I, Section 5 requires "employees covered by this Agreement" to become members in good standing of the Operative Plasterers and Cement Masons International Association ("the Plasterers' Union") as a condition of their continued employment (suggesting that, as used in this and other provisions of the CBA, "employees covered by this Agreement" could reasonably be interpreted as limited to "members of the Plasterer's Union"). In addition, Valley Painting notes that the terms "covered by this Agreement" and "employees" in the provisions cited by the Funds are not defined in the CBAs, and the provision requiring contributions generally discusses payment for the work *of members*. (*See* Art. XIV, §§ 2,

- 6 -

5, and 6) Accordingly, Valley Painting claims that, in the absence of a specific CBA provision requiring double payment, a reasonable interpretation of the relevant language of the CBAs is that only fireproofing or other plastering work *performed by members of the Plasterers' Union* compels contribution to the Funds, precluding judgment as a matter of law on liability.[6]

## II. DISCUSSION

### A. *Standard of Review*

Plaintiffs seek entry of a judgment on the issue of liability under Federal Rule of Civil Procedure 56(a). "Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 558 quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once this occurs, the party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed

---

[6] Valley Painting also argues that the CBAs are entirely limited to "prefabricated ventures" and that the work at issue did not involve prefabricated work. (Dkt. No. 33, p. 11) Valley Painting argument rests on its narrow interpretation of Article XIV, Section 1. Accepting Valley Painting's interpretation would render the rest of the CBAs meaningless. The plain language of this provision is that prefabricated ventures are to be treated like non-prefabricated ventures "unless agreed to by the Local Unions signatory to this agreement." CBA, Art. XIV, §1.

fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

### B. *ERISA Requires Contributions in Accordance with the CBAs*

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Thus, Valley Painting's obligation to make contributions to the Fund is dictated by the terms of its CBAs with Local 16. Whether a contract's terms are ambiguous is a question of law for the Court to determine. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999). A contract is said to be ambiguous when its words may reasonably understood in different ways. *See Farm Bureau v. Nikkel,* 460 Mich. 558 (1999*)*; *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535 (6th Cir. 2007). If the Court finds no ambiguity, it should proceed to interpret the contract and may do so at the summary judgment stage. *GenCorp*, 178 F.3d at 818. On the other hand, when a contract is in fact ambiguous, the meaning of its provisions is a question of fact to be decided after trial. *Royal Ins. Co. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008).

"In situations [like this] where an employer is exposed to conflicting CBAs that purport to impose a duty to 'double pay' for the same job, the collecting trustee must show that the CBA created a contractual obligation for the employer to make contributions to both plans, even though only one union did the work." *Trs. for Mich. BAC Health Care Fund v. OCP Contrs., Inc.*, 136 Fed.

Appx. 849, 851 (6th Cir. 2005) (unpublished) ("OCP II") *quoting Trustees of the B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co.*, 48 Fed.Appx. 188, 198 (6th Cir. 2002)("OCP I"). Therefore, if the Funds are to prevail on the instant motion, they must demonstrate that the language of the CBAs so clearly obligates Valley Painting to make contributions for the work at issue, that submission to a fact-finder is unnecessary.

> ### C. On the Issue of Contributions to the Funds, the Language of the CBAs is Ambiguous and Subject to Reasonable Differing Interpretations

The relevant portions of the CBA's are ambiguous as to whether Valley Painting is required to make a double payment. While, there can be no dispute that the "scope of work" provision includes "fireproofing" as a subcategory of work within the jurisdiction of "the Plasterers" (Art. XV), Article XIV compels payment of contributions to the Funds *only* "on all plasterers wherever and whenever employed." Does this phrase mean contributions are due on any fireproofing (plastering work) done by anyone, anywhere, or is payment limited to fireproofing work done by members of "the Plasterers' Union" wherever and whenever employed? The answer to this question is unclear as both interpretations are plausible. The Funds' claim that the lack of capitalization of the word "plasterers" indicates that the former (broad) interpretation applies. *See Cement Masons Union Local No. 592 Pension Fund v. Zappone*, 501 F.Supp.2d 714, 718 (E.D. Penn. 2007).[7] Yet, in at least one instance, the term "Plastering work" *is capitalized*. (*See* Art. XII, § 3, line 1 ("the traveling clause")). Does this mean that "Plastering work" is to be construed as work performed

---

[7] Interestingly, the decision in this case was that the employer was not required to contribute to the plaintiff's benefit fund for work performed by another union. Faced with cross motions for summary judgment, the court found that the *employer* was entitled to judgment as a matter of law. *Id.* at 719.

solely by members of the "Plasterers' Union?" Under the Funds' "capitalization theory," this would be a reasonable interpretation. Moreover, since Article XIV requires contributions to the Funds on "all plasterers" not "all plasterers *work*," the CBAs could be reasonably understood to mandate payment to the Funds for work performed by a specific type of worker (i.e., Plasterers Union members) as opposed to a more general type of work.

The language of the traveling clause (Article XII, Section 3) does not resolve this ambiguity. Like other CBA provisions relied upon by the Funds, the terms "covered by this Agreement" and "employee" in the traveling provision are not defined.[8] The CBAs do, however, require "employees covered by the Agreement" to become members of the Plasterers' Union as a condition of employment - supporting Valley Painting's interpretation that it is only required to pay contributions to the Fund for work performed by members of the Plasterers' Union. If the traveling clause is read to refer to Plasterers' Union members only, it makes sense. The clause provides protection for members of Local 16 sent on jobs outside of the areas covered by the CBAs. Specifically, it could reasonably be read to guarantee those members either (1) the greater of: (a) the level of pay and benefits provided by any other Plasterers' Union local CBA in the area where the work is performed, or (b) the level of pay specified by Article XIV "*plus all contributions specified in the jobsite local Agreement*" (emphasis added); **or** (2) (if there is no Plasterers' Union local in the area) the level of pay and benefits provided by the CBA with Local 16. (*See* Art. XII, § 3) Since the CBAs can reasonably be interpreted in different ways, judgment as a matter of law in inappropriate.

---

[8] In *Blando v. I & O.A. Slutzky, Inc.*, 68 N.Y.2d 869, 501 N.E.2d 25 (1986), the court found the phrase "all of the employees covered by this Agreement" ambiguous, because "it may be understood as either referring only to employees who are members of the signatory locals or to any employee performing work within the territorial jurisdiction of such locals. . . whether or not a member of such local." *Id.* at 870-71.

Last, the Funds point to two cases in which an employer was obligated to pay two union benefit funds when members of only one union actually performed the work: *Plasterers Local 67 Pension Trust Fund v. Niles Group, LTD.*, 2007 U.S. Dist. LEXIS 18001 (E.D. Mich. 2007) ("*Local 67 Funds*") and *Trustees of the Glaziers, Architectural Metal and Glass Workers Local Union No. 27 Welfare and Pension Funds v. Gibson*, 99 Fed.Appx. 740 (7th Cir. 2004) ("*Local 27 Funds*"). However, these cases are distinguishable from the present matter.

Unlike the instant matter, in *Local 67 Funds*, the employer "did not dispute that the jobs at issue...constituted plasterers' work as defined by the Agreement." *Local 67* at *3. In fact, the only issue upon which the employer relied was the absence of a double payment provision. *Id.* at *7. The argument that material portions of the CBA were ambiguous was not raised.

Similarly, in *Local 27 Funds*, "the crux of the dispute" was whether assignment of one union's work to another union excused the employer from making benefit fund contributions to both unions. *Local 27 Funds* at *3. Before reaching this question, the court found that the two CBAs at issue had overlapping coverage for work at issue. Therefore, even though this Seventh Circuit decision is of no precedential value in this district, it can nevertheless be distinguished because ambiguities exist as to the coverage of the Local 16 CBAs. Therefore, the cases cited by the Funds are inapplicable to the facts and procedural posture of this case.

### III.    CONCLUSION

Ambiguities exist in the language of the CBAs, necessitating resolution by a jury and denial of the Fund's motion for judgment of the issue of liability. Therefore it is **RECOMMENDED** that Plaintiffs' motion for summary judgment on liability be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: March 16, 2010

### CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 16, 2010.*

*S/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*
